IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANTHONY H. JACKSON, SR.,

    Petitioner,

v.                                                       Civil Action No. 1:20cv63
                                                       (Judge Kleeh)

P. ADAMS,

    Respondent.

## REPORT AND RECOMMENDATION

On April 7, 2020, the *pro se* petitioner initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' ("BOP") calculation of his sentence and, in particular, the fact that the BOP "removed jail credit [from the sentencing court] without authority" and "terminated his halfway house date." Petitioner was granted permission to proceed as a pauper on May 5, 2020, and paid his filing fee on June 9, 2020. Petitioner's July 31, 2020 "emergency" motion for appointed counsel and his alternative motion for expedited release was denied by Order entered August 3, 2020.

On November 13, 2020, the respondent was directed to show cause why the petition should not be granted. On January 8 2021, the respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. On January 11, 2021, a Roseboro Notice was issued. Despite receiving the Roseboro Notice, Petitioner never filed a response in opposition.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2, the undersigned now issues this Report and Recommendation.

## I. Factual Background

On December 6, 2011, Petitioner was sentenced in Orleans Parish, Louisiana, docket numbers 503621 and 506393, to a 5-year state term of confinement, with three years suspended, and a 3-year term of probation for numerous unrelated state offenses. See Declaration of Forest Kelly ("Kelly Decl."), Correctional Program Specialist, Federal Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("DSCC), ECF No. 18-2, ¶2 at 1. On April 13, 2012, Petitioner was released on parole, and his 3-year probation term commenced on May 12, 2013. Id. On July 13, 2014, a rule to revoke Petitioner's probation was filed in Orleans Parish District Court, and Petitioner was subject to a probation revocation at that time. Id.; see also PreSentence Investigation Report ("PSR"), ECF No. 18-2, ¶¶ 69 and 71.

On July 26, 2014, Petitioner was arrested by state authorities in Orleans Parish, Louisiana for the state offense of Felon with a Firearm. Kelly Decl., ¶ 3 at 2; see also PSR, ¶¶ 7, 16 – 18, and 85. The circumstances of the arrest resulted in the instant federal offense of Felon in Possession of a Firearm. See Kelly Decl., ¶ 4, see also PSR, ¶¶ 7, 16-18 and 85.

Between July 26, 2014 through August 25, 2014, Petitioner committed the federal offenses of Conspiracy to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin and Hydrocodone and Conspiracy to Corruptly Obstruct, Influence, or Impede an Official Proceeding while in the custody of Louisiana state authorities. See Kelly Decl., ¶ 4, see also PSR, ¶¶ 6, 8 and 19 - 35.

On September 4, 2014, Petitioner was transferred to federal custody pursuant to a federal writ of habeas corpus *ad prosequendum*. See Kelly Decl., ¶ 5; see also PSR at 2; United States Marshal Service ("USMS") USM-129 Individual Custody/Detention Report, ECF No. 18-2 at 28.

On July 21, 2016, Petitioner's state probation in Orleans Parish, Louisiana, docket numbers 503621 and 506393, was revoked, and Petitioner was sentenced to a 5-year term of incarceration. Kelly Decl., ¶ 6, see also Fourth Addendum to the PSR, ECF No. 18-2 at 30. When calculating the 5-year term of incarceration, the Louisiana Department of Corrections commenced the sentence on July 21, 2016 and applied 857 days of credit for the time Petitioner spent in the primary custody of state authorities from December 6, 2011 to April 13, 2012 and from July 24, 2014 to July 20, 2016. Kelly Decl. ¶ 6; see also Time Computation & Jail Credits, ECF No. 18-2 at 32 – 33. This calculation resulted in a maximum expiration date of March 16, 2019. Id. Petitioner was released from state custody on August 4, 2016, via diminution of sentence, "as if on parole" until March 16, 2019. See Kelly Decl., ¶ 6, see also State of Louisiana Department of Public Safety & Correction Diminution of Sentence, ECF No. 18-2 at 35. Petitioner's release by state authorities on August 4, 2016 established exclusive federal custody. Kelly Decl., ¶ 7.

On March 15, 2018, Petitioner was sentenced by the U. S. District Court for the Eastern District of Louisiana to a 90-month total term of confinement for Conspiracy to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Heroin and Hydrocodone, Felon in Possession of a Firearm, and Conspiracy to Corruptly Obstruct, Influence, or Impede an Official Proceeding. Kelly Decl., ¶ 8; see also Judgment in a Criminal Case, ECF No. 18-2 at 37. On May 21, 2020, the 90-month term was reduced to a term of 77 months. See Kelly Decl., ¶ 8; see also Amended Judgment in a Criminal Case, ECF No. 18-2 at 45. None of the time Petitioner spent in the primary custody of the State of Louisiana from July 26, 2014 through August 4, 2016 is creditable against his federal term of confinement under 18 U.S.C. § 3585(b), since that time was credited against his state sentence. Kelly Decl., ¶ 10.

Initially, the BOP computed Petitioner's sentence to reflect jail credit from July 26, 2014 through March 14, 2018 with a projected release date of December 16, 2020. See Kelly Decl., ¶ 11, see also Sentence Monitoring Computation Data as of 11-25-2019, ECF No. 18-2 at 59. However, upon later audit of the sentence, it was determined that the jail credit from July 26, 2014 until August 3, 2016 had already been credited to Petitioner's previous state sentence, and exclusive federal custody was not established until Petitioner's release by state authorities on August 4, 2016; therefore, the computation of Petitioner's sentence was updated to reflect jail credit from August 4, 2016 to March 14, 2018, the period of time that had not been credited to any other sentence." See Kelly Decl., ¶ 11, see also Sentence Monitoring Computation Data as of 5-27-2020, ECF No. 18-2 at 62. The BOP updated Petitioner's sentence computation to reflect a 77-month term of confinement commencing on March 15, 2018, with jail credit from August 5, 2016 through March 14, 2018. Based on this new calculation, Petitioner is currently scheduled to be released from the BOP's custody, via Good Conduct Time ("GCT") release, on January 24, 2022. See Kelly Decl., ¶ 12; see also Public Information Inmate Data as of 12-03-2020, ECF No. 18-2 at 65.

## II. The Pleadings

### A. The Petition

Petitioner appears to allege that three years after his judgment and commitment order was entered, the BOP illegally "removed" his jail credit and terminated his halfway house date without due process. He contends that this makes his plea "non- and void [sic]" and his Judgment and Commitment order illegal. ECF No. 1 at 5. He contends that this changed his projected release date from December 2020 to a later date. Id. at 6.

With respect to exhaustion of administrative grievances, the petitioner indicates that he filed a BP-8 informal complaint [ECF No. 1 at 7] but that to "exhaust would be futile[.]" ECF No. 1 at 9. He attaches a copy of a March 13, 2020 BP-8 informal resolution form. ECF No. 1-2 at 1. He also attaches a copy of his Sentence Monitoring Computation Data as of 3-16-2020, showing a home detention eligibility date of June 26, 2022, and a GCT projected release date of December 26, 2022. ECF No. 1-1.

For relief, the petitioner requests that his Judgment and Commitment order be "terminated" and/or that his jail credit be reinstated and that he be released immediately, with no supervision. ECF No. 1 at 8.

**B. Motion to Dismiss or for Summary Judgment**

In support of their alternative motions, Respondent argues that:

1) Petitioner tacitly admits and BOP records confirm that Petitioner did not administratively exhaust his sentence computation before he filed this lawsuit; BOP records further establish that Petitioner has never filed an administrative remedy with his institution or the BOP at all; further, Petitioner's implied allegation that exhaustion would be futile has no merit and does not establish that the administrative review would be futile; and

2) The BOP retains exclusive discretion to compute federal prisons sentence, and the BOP properly exercised that discretion to compute the petitioner's federal sentence; Petitioner has already received all the prior custody credit to which he is entitled.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of

defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

  The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have often cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45 - 46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See* Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 - 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

7

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## IV. Analysis

**Exhaustion of Administrative Remedies**

Generally, a federal inmate must exhaust available administrative remedies before he files a habeas petition. See, e.g., McClung v. Shearin, 90 Fed.Appx. 444 (4th Cir. 2004); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996) (same);Greene v. Warden FCI Edgefield, 2017 WL 1458997 (D.SC 2017) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004) (same). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Alexander v. Hawk, 159 F.2d 1321, 1327-28) (11th Cir. 1998) (internal citation omitted).

However, because the statute authorizing habeas lawsuits does not expressly require administrative exhaustion, Reeder v. Phillips, 2008 WL 2434003 at *2 (N.D. W.Va. June 12, 2008), this Court retains discretion to disregard the exhaustion requirement in "pressing

8

circumstances." Id. at *3. However, exhaustion should only be excused where administrative review would be futile. Jaworski v. Gutierrez, 509 F. Supp. 2d 573 (N.D. W.Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rule adversely. Reeder, 2008 WL 2434003 at *3.

In this case, the petitioner tacitly acknowledges that he has not exhausted his administrative remedies. He attaches a March 13, 2020 BP-8 Informal Remedy to his petition, in which he avers that the BOP "removed" his jail credit. ECF No. 1-2. However, he implicitly admits that he did not go beyond the BP-8 in an attempt to exhaust, and he filed his petition only three and a half weeks later, on April 7, 2020, well before he could have had time to fully complete the exhaustion process, effectively admitting that he did not exhaust. A review of Jackson's BOP administrative history shows that he has never filed an administrative remedy. Kelly Decl., ¶ 13; see also Administrative Remedy Generalized Retrieval, ECF No. 18-2 at 69. Exhaustion of administrative remedies would clearly be appropriate in this instance given that the BOP is charged with the responsibility of sentence computation and has expertise in this area. See United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351 (1992)(the Attorney General, through the BOP, has the responsibility for administering federal sentences); United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (the power to grant jail time credit lies exclusively with the Attorney General).

While this Court has in the past excused a petitioner from exhausting his administrative grievances, it has only done so where the record before it established no unresolved issues. That is not the case here; the record now before this Court shows that there were numerous unresolved questions which would require a response from the respondent before a reliable recommendation could be issued on the petition. Petitioner's criminal history and sentencing computation issues are quite complex. By requiring the petitioner to attempt resolution of these issues within the BOP's

administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

The undersigned acknowledges that at the time Jackson filed his petition, he believed that his properly calculated release date was December, 2020. However, the mere fact that he may be required to serve more time does not justify excusing him from exhausting his administrative grievances. Had he followed proper procedure and begun exhausting his grievance procedure soon after his March 13, 2020 informal remedy was denied, he could have timely received a response that would have provided him relief or an explanation which might have satisfied him. Indeed, the record before the undersigned reveals that Jackson's GCT projected release date, although not December, 2020, as he had hoped for, is now actually January 24, 2022, eleven months earlier than Jackson expected when he first filed this petition.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment [ECF No. 18] be **GRANTED**, and the petitioner's § 2241 petition [ECF No. 1] be **DISMISSED without prejudice** for the failure to exhaust administrative remedies.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal

Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Kleeh.

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* petitioner via certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: June 8, 2021

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE